Submitted January 6, affirmed November 21, 2012

OREGON EDUCATION ASSOCIATION,
an Oregon non-profit corporation;
and American Federation of Teachers-Oregon
Issue Political Action Committee,
an Oregon unincorporated association,
*Plaintiffs-Respondents*,

*v.*

Loren PARKS;
Parks Medical Electronic Sales, Inc.,
a Nevada corporation;
Parks Foundation,
a Nevada non-profit corporation;
Parks Education Foundation,
a Nevada non-profit corporation;
and William Sizemore,
*Defendants-Appellants*,

*and*

PARKS MEDICAL ELECTRONICS, INC.,
*Defendant.*

Multnomah County Circuit Court
091015201; A147627

291 P3d 789

David H. Angeli, Benjamin Souede, and Angeli Law Group LLC, filed the briefs for appellants Loren Parks, Parks Medical Electronic Sales, Inc., Parks Foundation, and Parks Education Foundation.

William Sizemore filed the briefs *pro se*.

Gregory Hartman, Michael J. Morris, and Christine N. Moore filed the briefs for respondents.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.

BREWER, J.

## BREWER, J.

Defendants appeal a limited judgment in an action under the Oregon Racketeering Influenced and Corrupt Organizations Act (ORICO), ORS 166.715 to 166.735. The trial court denied defendants' special motion to strike pursuant to ORS 31.150, Oregon's "anti-SLAPP" statute.[1] Defendants assign error to the trial court's conclusion that plaintiffs met their evidentiary burden under ORS 31.150(3) to provide substantial evidence to support a *prima facie* ORICO claim. Plaintiffs cross-assign as error the court's conclusion that defendants met their initial burden under ORS 31.150 to show that plaintiffs' ORICO claim arises out of conduct in furtherance of the exercise of defendants' constitutionally protected rights of petition or free speech. We conclude that the trial court did not err in determining that plaintiffs satisfied their evidentiary burden under ORS 31.150(3). Accordingly, we affirm on appeal and need not reach plaintiffs' cross-assignment of error.

ORICO makes it unlawful to knowingly use or invest proceeds derived from a pattern of racketeering in an enterprise, to acquire or maintain an interest in an enterprise through a pattern of racketeering, to participate in an enterprise through a pattern of racketeering, or to conspire to do any of those things. ORS 166.720. Plaintiffs, who are public employee unions, brought this ORICO action against defendants, alleging a pattern of racketeering activity and seeking damages caused by defendants' racketeering activities in connection with placing certain measures on the statewide ballot for the November 2008 election. Defendants are Loren Parks, as well as numerous entities controlled by Parks (referred to for the sake of simplicity as "Parks" throughout this opinion), and William Sizemore. The gravamen of plaintiffs' complaint is that, for the purposes of harming plaintiffs, avoiding the effects of prior injunctions, and thwarting plaintiffs' abilities to collect a prior judgment, Parks and Sizemore conspired to use the tax-exempt American Tax Research Foundation (ATRF) to improperly fund campaigns to place four

---

[1] SLAPP is the acronym for "Strategic Lawsuits against Public Participation." *See Horton v. Western Protector Ins. Co.*, 217 Or App 443, 452, 176 P3d 419 (2008).

antiunion ballot measures on the 2008 statewide election ballot. In particular, plaintiffs alleged that, to accomplish those purposes, Sizemore committed various acts of perjury and unsworn falsification, and Parks conspired with him to do so. Plaintiffs further asserted that they are entitled to damages based on their expenditures to defeat those ballot measures.

Defendants filed a special motion to strike plaintiffs' complaint. *See* ORS 31.150(2)(d) (providing that a special motion may be made in an action arising out of "conduct in furtherance of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest"). ORS 31.150(3) provides that, if a defendant makes a *prima facie* showing that the claim arises out of protected activity under subsection (2), "the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." The trial court ruled that defendants made an initial showing that the claim arose out of protected activity, and, after reviewing materials submitted by plaintiffs, concluded that plaintiffs had made the requisite showing to defeat the motion.

A special motion to strike "shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F [pertaining to consolidation of motions]." ORS 31.150(1). As pertinent here, ORCP 21 A authorizes a court, in entertaining a motion under that section, to consider matters outside the pleadings. In determining whether a party has satisfied its burden under ORS 31.150(3), a court "shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS 31.150(4). Finally, the court's determination pursuant to ORS 31.150(3) "does not affect the burden of proof or standard of proof that is applied in the proceeding." ORS 31.150(5)(b).

The trial court summarized plaintiffs' pleadings as follows:

"Plaintiffs' theory, in essence, is that Sizemore and defendant Loren Parks (Parks) conspired to use American

Tax Research Foundation (ATRF), a nonprofit corporation designated as a tax-exempt educational organization, to improperly fund the campaigns for the 2008 ballot measures (1) as part of their continuing effort to harm OEA and AFT; (2) to avoid paying a judgment debt owed by Sizemore; and (3) to circumvent injunctions previously entered against the Parks Foundation, OTU-PAC and OTU-EF. Plaintiffs allege that the scheme benefitted the Parks defendants by allowing them to make tax deductible contributions to ATRF that Sizemore used for personal and political purposes. Plaintiffs further allege that, as part of this scheme, Sizemore (1) lied under oath in numerous respects; and (2) submitted false 'CT-12 reports' (which were required to maintain ATRF's tax-exempt status), in an effort to avoid detection."

In their motion to strike, defendants contended that numerous assertions contained in plaintiffs' affidavits should not have been considered by the court because they constituted inadmissible hearsay, inadmissible matters of opinion, or were mere arguments. Defendants also argued that plaintiffs had not submitted sufficient evidence to establish a causal connection between the allegedly unlawful conduct and any injury or damages to plaintiffs, and that plaintiffs had not adduced sufficient evidence that Parks was aware of or involved in any racketeering activities that may have occurred.

After considering plaintiffs' affidavits setting out the sums that they had spent opposing the 2008 ballot measures and what the trial court described as "voluminous evidence in support of [plaintiffs'] contentions that (1) defendants intended to harm [plaintiffs] by proposing and supporting the 2008 ballot measures; and (2) defendants' actions violated ORICO," the court ruled that plaintiffs had satisfied their evidentiary burden under ORS 31.150.

Because the trial court record is voluminous, we discuss only the portions of the record that are pertinent to each of defendants' arguments. To provide context for that discussion, we briefly describe certain litigation that preceded the filing of this action. First, in 2000, the State of Oregon filed a complaint against Parks, alleging that he had misused Parks Foundation charitable funds for political

purposes. That litigation resulted in a stipulated judgment and injunction that prohibited the Parks Foundation from contributing to political action committees or funding campaign materials.

In another case, *American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 145 P3d 1111 (2006) (*AFT I*), aff'd, 345 Or 1, 189 P3d 9 (2008) (*AFT II*), certain organizations that Sizemore operated were found to have engaged in racketeering activities with respect to measures on the 2000 election ballot. That case resulted in a money judgment as well as injunctive relief against the defendant organizations and any successor organizations.[2] Plaintiffs also initiated a separate action in which they successfully sought to hold Sizemore personally responsible for those damages. *See American Federation of Teachers v. Sizemore*, 209 Or App 424, 150 P3d 408 (2006), *rev den*, 345 Or 95 (2008) (*AFT III*) (reversing judgment in light of reversal of one of the counts at issue in *AFI I*).

Plaintiffs' theory in the present action is that defendants hatched and executed a plan to funnel money from Parks to fund (through tax-exempt "donations") Sizemore's living expenses and expenses related to his ongoing anti-union political activities, in such a manner that the funds would not be subject to plaintiffs' efforts to collect their prior judgments against Sizemore and the various political entities that he managed. In support of that theory, plaintiffs submitted the following evidence in opposition to defendants' motion pursuant to ORS 31.150(3): (1) Both defendants have made statements avowing their enmity toward public employee unions and have a long history of supporting antiunion legislation; (2) Defendants and their related entities are subject to the injunctions or damage awards described above; (3) Defendants exchanged correspondence articulating their plans to pursue antiunion political strategies and to avoid the effects of prior judgments and injunctions; that correspondence reflected Sizemore's hope that plaintiffs would need to spend substantial sums trying to defeat their proposed ballot measures, and Parks's

---

[2] *See also OEA v. Oregon Taxpayers United*, 227 Or App 37, 204 P3d 855 (2009); *OEA v. Parks*, 253 Or App 288, 291 P3d 789 (2012).

desire to fund such plans in a manner that his contributions would not be taxable; (4) Sizemore created several new entities, including ATRF (a name confusingly similar to the nationally known tax-exempt organization known as ATRF), through which Parks funneled money to Sizemore; (5) Parks asked Sizemore to ensure that ATRF would receive nonprofit status; (6) Sizemore did so by making misrepresentations about ATRF; (7) Parks funneled a large amount of money through ATRF to Sizemore that he used to promote the 2008 ballot measures; and (8) defendants took steps to obscure the financial links described above.

As noted, defendants assert on appeal that the trial court erred in concluding that that evidence was sufficient to survive their special motion under ORS 31.150, and that the court evaluated the sufficiency of the evidence under the wrong standard. We first discuss defendants' argument concerning the standard of review, and then discuss their arguments concerning the sufficiency of the evidence.

The parties agree—as did the trial court—that our opinion in *Staten v. Steel*, 222 Or App 17, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009), provides guidance as to the trial court's evaluation of motions under ORS 31.150. Defendants maintain, however, that the trial court misapplied *Staten* and, thus, incorrectly evaluated the evidence. In *Staten*, we made the following observations:

> "A special motion to strike has benefits for the defendant that other pleading motions do not. * * * When a defendant makes a *prima facie* showing that the plaintiff's claim arises out of a covered action, the burden shifts to the plaintiff to show that there is a probability that it will prevail on its claim. In doing so, the plaintiff must present substantial evidence to support a *prima facie* case. ORS 31.150(3). In making its decision on the motion, the trial court examines not only the pleadings but also any supporting and opposing affidavits. ORS 31.150(4). The special motion, thus, may require the plaintiff to present the factual basis for its claim at the beginning of the litigation.
>
> "* * * * *
>
> "Because it goes beyond the pleadings to examine the evidence in support of the plaintiff's claims, a special motion to strike bears many of the characteristics of a motion for

summary judgment. The primary differences are that, in the case of a motion to strike, the moving party may not need to present any evidence of its own, and the nonmoving party may need to meet a heavier burden in order to avoid dismissal. In a motion for summary judgment, the court does not weigh the evidence but must deny the motion if there is any disputed issue of material fact. The moving party, thus, must usually present some factual support for the motion. ORCP 47 C. In contrast, in a special motion to strike, the moving party must show only that the nonmoving party's claim arises out of one of the actions that ORS 31.150(2) describes. If the moving party makes that showing, which it may be able to do based on the pleadings alone, the nonmoving party then has the burden of establishing a *prima facie* case that is sufficient to show that there is a probability that it will prevail. That burden is potentially much heavier than merely establishing the existence of a disputed issue of fact."

*Id.* at 29-31; *see also Page v. Parsons*, 249 Or App 445, 448, 277 P3d 609 (2012) (similarly describing the operation of the statute).

Defendants seize on the "burden is potentially much heavier" language quoted above, and argue that the trial court failed to appreciate the weight of plaintiffs' burden and thus incorrectly evaluated the evidence. In particular, defendants note that, in denying the motion, the trial court stated that "a reasonable jury could conclude by inference" various facts, in light of the evidence submitted. Defendants argue that the "reasonable jury" standard is a summary judgment standard and that, in light of what we said in *Staten*, the standard established by ORS 31.150 requires *more* evidence than that from which a reasonable jury could conclude that plaintiffs had established the facts necessary to prove their claim. Neither ORS 31.150 nor *Staten* supports defendants' contention.

As a textual matter, ORS 31.150(5)(b) clearly states that a determination under this statute "does not affect the burden of proof or standard of proof that is applied in the proceeding." Thus, to the extent that defendants suggest that, in evaluating a motion pursuant to ORS 31.150, a court may allow a case to proceed only if the plaintiffs present *more* evidence than a jury ultimately would need to render a verdict

for the plaintiffs, that suggestion is contrary to the plain text of the statute. Moreover, *Staten* did not suggest such a thing. In context, it is apparent that our reference in *Staten* to a heavier burden did not pertain to the quantum of evidence that is necessary to establish the elements of a claim; rather, that reference was meant to highlight the shifting burdens with respect to which party must produce what, and when, and the light in which the court must view the evidence.

We began by observing some similarities and differences between special motions under ORS 31.150 and summary judgment motions. We noted that, under ORS 31.150, "the moving party may not need to present any evidence of its own [other than its initial showing that protected activity as defined in ORS 31.150(2) is involved], and the nonmoving party may need to meet a heavier burden in order to avoid dismissal." *Staten*, 222 Or App at 31. That statement acknowledged that ORS 31.150(3) expressly shifts the burden of production of evidence onto the nonmoving plaintiff, and it requires a court to evaluate the evidence and draw a conclusion as to whether there is a probability that the plaintiff will prevail. By contrast, on summary judgment, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party, and draw a conclusion as to whether there is a triable disputed issue or fact. ORCP 47 C.

Defendants suggest that, by referring to what "a reasonable jury could conclude," the trial court in this case improperly applied the summary judgment standard. We disagree. "Summary judgment is appropriate if *no* objectively reasonable jury could reach a verdict for the nonmoving party on the subject of the motion based on the evidence in the record, viewed in the light most favorable to the nonmoving party." *Peterson v. McCavic*, 249 Or App 343, 356, 227 P3d 572 (2012) (emphasis added). However, the question of what a reasonable juror could infer from particular evidence is not applicable solely in the summary judgment setting. As pertinent here, it was also an acceptable way to describe the courts conclusion that the proffered evidence was sufficient to "support a prima facie case" under ORS 31.150(3). Nothing in the SLAPP statute suggests that

only direct evidence, as opposed to reasonable inferences from other evidence, will suffice to support a *prima facie* case. The trial court's lengthy ruling on defendants' motion does not in any way suggest that it improperly evaluated the evidence under the summary judgment standard.

We turn to defendants' arguments concerning the sufficiency of plaintiffs' evidentiary showing. Defendants first contend that a number of plaintiffs' exhibits and affidavits contain matters that were inadmissible, that they moved to strike those submissions, but that the trial court nevertheless erroneously considered that evidence in making its determination under ORS 31.150. In making its ruling, the court indicated that it had considered "pleadings and affidavits that comply with ORS 31.150(4) and the Oregon Rules of Evidence." Defendants do not point to particular submissions that the court improperly considered, but, rather, argue that the court committed reversible error because it "failed to identify the evidence it deemed admissible and considered in making its ruling." Again, we disagree.

ORS 31.150(4) specifically requires the court to make its decision based on the "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Defendants assume—as do we for purposes of this case—that, as is the circumstance under ORCP 47, affidavits for purpose of ORS 31.50(4) "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify as to the matter stated therein." ORCP 47 D. Thus, the trial court was not required to identify in its ruling "admissible evidence"— it was required to evaluate affidavits setting forth such facts as would be admissible in evidence. Because defendants do not point to any inadmissible evidence that the trial court relied on in its ruling, we reject defendants' evidentiary arguments without further discussion.[3]

---

[3] Defendants assert, for the first time on appeal, that perjury cannot form a "predicate act" for purposes of ORICO, noting that at common law, statements made as part of judicial proceedings were privileged. We understand defendants to suggest that the trial court should not have considered any of plaintiffs' submissions with respect to perjured statements for that reason. Plaintiffs respond

Finally, we turn to defendants' specific challenges to the sufficiency of plaintiffs' submissions to defeat defendants' motion. ORICO violations are grouped into four categories under ORS 166.720(1) to (4). Plaintiffs alleged violations of ORS 166.720(3) and (4). ORS 166.720(3) makes it "unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."[4] ORS 166.720(4) provides that it "is unlawful for any person to conspire or endeavor to violate any of the provisions of subsections (1), (2) or (3) of this section."

The trial court concluded that plaintiffs made the requisite showing that defendants violated subsections (3) and (4), when Parks either solicited or conspired with Sizemore to commit perjury and unsworn falsification to conceal his improper funding of Sizemore's political work on the ballot measures through ATRF, and Sizemore committed those acts as part of the conspiracy or plan to avoid detection. Parks argues that plaintiffs' showing was insufficient to establish that he engaged in racketeering or a conspiracy to commit the predicate acts, and that the trial court erred in concluding otherwise. Parks asserts that plaintiffs failed to show that he violated ORS 166.720(3) by soliciting Sizemore to engage in the predicate acts, because plaintiffs presented no evidence that Parks acted with the intent to commit perjury and unsworn falsification or that he commanded or solicited Sizemore to engage in that conduct. In defendants' view, evidence that Parks asked Sizemore to secure

that, had the legislature not intended to allow ORICO claims based on predicate acts of perjury, the legislature would not have specifically included perjury as an ORICO predicate act. ORS 166.715(6)(a)(B). Because defendants did not preserve this issue, we do not address it.

[4] An "enterprise" includes, among other things, any profit or nonprofit legal entity and any association or group of individuals associated in fact although not a legal entity. ORS 166.715(2). "Racketeering activity" means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit" any conduct that constitutes a crime as enumerated in a list of statutes, referred to as "predicate acts." ORS 166.715(6). Racketeering activity includes perjury, false swearing, and unsworn falsification. ORS 166.715(6)(a)(B); *see* ORS 162.065 - 162.085. A "pattern of racketeering activity" is defined as "engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics." ORS 166.715(4).

tax-exempt status for ATRF and that funds originating with Parks were subsequently misidentified does not support such an inference. According to defendants, plaintiffs were required to affirmatively show that Parks solicited Sizemore to commit the specific predicate acts of perjury and unsworn falsification, and because there was no evidence that Parks was aware that Sizemore would give sworn testimony on any relevant issue or make those specific unsworn falsifications, plaintiffs did not show that Parks solicited perjury or unsworn falsification.

Plaintiffs reply that evidence that Parks intended the funds funneled through ATRF to be used for political purposes and that Parks asked Sizemore to obtain tax-exempt status for ATRF was legally sufficient to show that defendants needed and intended to cover up their improper use of ATRF as a conduit for political contributions. Plaintiffs reason that disclosure of ATRF's true nature would have exposed defendants to tax liabilities, as well as contempt charges for violating the injunctions against them, and that the cover up allowed Parks to support Sizemore's political activity while evading plaintiffs' attempts to collect their judgment against Sizemore. Plaintiffs also contend that their evidence showed that Parks knew that a cover up required Sizemore to file false statements and to commit perjury when questioned about ATRF, and that Parks intended for Sizemore to commit those acts.

We conclude that plaintiffs have the better of the argument. Plaintiffs' affidavits and supporting documents indicate that (1) Parks wanted ATRF to have tax-exempt status, (2) disclosure of the nature of Parks's donations to ATRF would have jeopardized ATRF's tax-exempt status and exposed violations of the injunctions, and (3) Parks wanted to avoid discovery of those violations. It is also reasonable to infer that those violations would have been exposed if Sizemore had not concealed ATRF's true nature by committing perjury and unsworn falsification, and that Parks knew that was so. It follows that the evidence was sufficient to support an inference that Parks solicited Sizemore to commit the predicate acts necessary to establish a violation of ORS 166.720(3).

Defendants also assert that plaintiffs' showing with respect to their conspiracy claims under ORS 166.720(4) was insufficient to establish that Parks and Sizemore believed and agreed that they would have to cover up the alleged ATRF enterprise through false swearing, perjury, and unsworn falsification. *See Osborne v. Fadden*, 225 Or App 431, 436-37, 201 P3d 278, *rev den*, 346 Or 213 (2009) (a civil conspiracy requires evidence of two or more persons, an object to be accomplished, a meeting of the minds on the object or course of action, one or more unlawful overt acts, and damages as the proximate result thereof). Parks asserts that, even if the record contains evidence that he knew or anticipated that Sizemore would testify falsely or make false filings, merely acting with certain knowledge about an alleged coconspirator does not constitute the requisite agreement for a conspiracy. *See Yanney v. Koehler*, 147 Or App 269, 274-75, 935 P2d 1235, *rev den*, 325 Or 368 (1997). Moreover, defendants contend that plaintiffs must present evidence that the primary purpose of the conspiracy was to cause injury to plaintiffs, and plaintiffs offered no such evidence. *Id.* at 275.

We conclude that plaintiffs' showing was not deficient in the asserted respects. The evidence showed that defendants endeavored and conspired to violate ORICO. Defendants made numerous inaccurate and misleading filings respecting what ATRF actually did, fraudulently acquired tax-exempt status for ATRF, gave ATRF a name similar to an organization not associated with Sizemore, allowed Parks to direct Sizemore's work on the ballot measures, provided Sizemore with a source of support from the funds that Parks furnished to ATRF, and engaged in lies and perjury when asked about the true nature of ATRF.

Defendants next argue that, even if they violated ORICO, plaintiffs did not show that those violations caused their injuries under ORS 166.725(7)(a). Relying on *Kotera v. Daioh Int'l. U.S.A. Corp.*, 179 Or App 253, 277, 40 P3d 506 (2002), and *Holmes v. Securities Investor Protection Corp.*, 503 US 258, 112 S Ct 1311, 177 L Ed 2d 532 (1992), defendants contend that ORS 166.725(7)(a) limits plaintiffs' recovery for violations under ORS 166.720(3) to injuries caused directly by the alleged predicate acts. Defendants assert that

plaintiffs offered no evidence that Sizemore's alleged perjury and unsworn falsification *directly* caused them to spend money opposing the ballot measures; therefore, defendants reason, plaintiffs failed to satisfy their evidentiary burden under ORS 166.725(7)(a) to show that they were injured *by reason of* a violation of ORS 166.720(3). Similarly, defendants argue that plaintiffs also failed to demonstrate that they were injured *by reason of* a violation under ORS 166.720(4), because defendants' alleged conspiracy to commit perjury and unsworn falsification was not the direct cause of plaintiffs' expenditures in opposing the ballot measures. In defendants' view, there is no evidence that defendants could not have placed the measures on the ballot without a conspiracy to secretly fund them through ATRF; therefore, defendants posit, plaintiffs would have spent money to oppose the measures regardless of any conspiracy.

ORS 166.725(7)(a) sets out the causation requirement for an ORICO claim: "Any person who is injured by reason of any violation of the provisions of ORS 166.720 (1) to (4) shall have a cause of action for three-fold the actual damages sustained and, when appropriate, punitive damages." The trial court concluded that plaintiffs presented sufficient evidence that they were injured by reason of defendants' violation of ORS 166.720(3) by showing that defendants secretly used funds to promote ballot measures that would harm plaintiffs. The court also concluded that plaintiffs presented sufficient evidence that they were injured by reason of defendants' violation of ORS 166.720(4) by showing that plaintiffs were injured by the conspiracy itself. As explained below, we agree with the trial court's conclusion.

Defendants' contention that ORS 166.725(7) limits recovery to injuries directly caused by predicate acts is based on a statement in *Kotera* that "ORS 166.720(3) is the avenue to redress injuries caused by the predicate acts themselves." 179 Or App at 277-78. That statement must be viewed in context:

> "To prove a claim under ORS 166.720(1), plaintiff must produce evidence that he was injured *by the use or investment* of racketeering income, as opposed to injury caused *by the predicate acts themselves.* Similarly, under

ORS 166.720(2), plaintiff must show that he was injured *by the acquisition* of an interest in a legitimate business enterprise, and, under ORS 166.720(4), *by the conspiracy itself*. Here, plaintiff has not alleged any injury apart from that caused by the predicate acts themselves. Plaintiff demurs that a chain of causation suffices to establish injury, stating that 'the use of fraudulently obtained money from [plaintiff] was used to keep the enterprise afloat, which allowed the enterprise to continue to feed at the fraudulent trough, thereby resulting in the entire monetary losses suffered by [plaintiff].' However, the connection between a defendant's use or investment of racketeering income and a plaintiff's injury must be more immediate than mere reinvestment in the enterprise, such as the injury to a defendant's competitors. Accordingly, the trial court did not err in granting a directed verdict on plaintiff's claims under ORS 166.720(1), (2), and (4).

"By contrast, ORS 166.720(3) is the avenue to redress injuries caused by the predicate acts themselves. The essential elements of subsection (3) consist of: (1) a defendant's direct or indirect participation (2) in a pattern of racketeering activity (3) as part of an enterprise."

179 Or App at 277-78 (emphasis in original; citations and some internal quotation marks and brackets omitted; brackets in *Kotera*).

In *Kotera*, the plaintiff alleged claims under all four sections of ORS 166.720 for injuries caused by the predicate acts themselves. *Id.* at 276-77. We explained that the plaintiff could not allege a claim for injuries caused by the predicate acts themselves under subsections (1), (2), or (4), because each of those sections specified different injuries based on additional conduct—the use or investment of racketeering income under subsection (1), the acquisition of an interest in a legitimate business enterprise under subsection (2), and the conspiracy itself under subsection (4). *Id.* at 277. Only subsection (3) provided a cause of action for racketeering activity based on the predicate acts alone. In that context, we stated that claims for injuries caused by the predicate acts themselves could be brought under ORS 166.720(3) and not the other subsections. *Id.* at 278. *Kotera*, however, did not limit the recovery of ORICO damages to those directly caused by the predicate acts.

Defendants' position is also contrary the Supreme Court's reasoning in *AFT II*, 345 Or at 9. In that case, the defendants argued that the plaintiffs were not "injured by reason of" the defendants' predicate acts because ORS 166.725(7)(a) requires a "direct" causal connection between the defendants' acts and the damages claimed by the plaintiffs. *Id*. The defendants urged the court to apply the test for causation under the federal RICO statutes, requiring the pattern of racketeering activity to be the proximate or direct cause of the plaintiff's injury, not merely one incident in a sequence of events that preceded the loss. The court declined to adopt the federal test, but concluded that, even under that test, the plaintiffs were "injured by reason of" the defendants' actions within the meaning of ORS 166.725(7)(a), because that statute "unquestionably permits recovery for injuries that are the *intended* consequence of an ORICO violation." *AFT II*, 345 Or at 17; *see also id*. at 15 n 9, 16 n 10 (emphasis in original). The court stated that, where "the plaintiffs alleged that the very purpose of the enterprise and the actions that it took * * * was to harm the plaintiffs by, among other things, forcing the plaintiffs to their spend money and time opposing the measures," the causation was "'simple and direct.'" *Id*. at 21 quoting *AFT I*, 208 Or App at 369. The same rationale applies in this case; as the trial court explained, plaintiffs presented "voluminous evidence" that defendants intended to harm plaintiffs by proposing and supporting the 2008 ballot measures. Therefore, we reject defendants' causation-related arguments.

Finally, defendants argue that plaintiffs' claimed injuries, consisting of voluntary political expenditures, are not cognizable under ORICO. That argument is foreclosed by this court's rejection of a similar argument in *AFT I*, which involved the same type of damages. *See* 208 Or App at 373-74.

In sum, we conclude that the trial court properly denied defendants' special motion to strike.

Affirmed.