Argued February 1, affirmed as modified March 17, 1980

SUMNER,
*Appellant - Cross-Respondent,*
*v.*
BENNETT,
*Respondent - Cross-Appellant.*

(No. 107249, CA 13559)

608 P2d 566

Marc D. Blackman, Portland, argued the cause and filed the briefs for appellant - cross-respondent. With him on the briefs was Ransom, Rogers & Blackman, Portland.

David A. Rhoten, Salem, argued the cause and filed the brief for respondent - cross-appellant. With him on the brief was Rhoten, Rhoten & Speerstra, Salem.

Before Schwab, Chief Judge, and Gillette and Campbell, Judges.

GILLETTE, J.

**GILLETTE, J.**

Plaintiff brought this action pursuant to ORS 260.532,[1] the Oregon Corrupt Practices Act. He sought general and punitive damages for alleged false statements made by the defendant during the 1978 primary

[1] ORS 260.532 provides:

"(1) No person shall cause to be written, printed, published, posted, communicated or circulated, any letter, circular, bill placard, poster or other publication, or cause any advertisement to be placed in a publication, or singly or with others pay for any advertisement, with knowledge or with reckless disregard that the letter, circular, bill, placard, poster, publication or advertisement contains a false statement of material fact relating to any candidate, political committee or measure.

"(2) A candidate who knows of any consents to a publication or advertisement prohibited by this section with knowledge or with reckless disregard that it contains a false statement of material fact, violates this section regardless of whether the candidate has participated in the publication or advertisement.

"(3) There is a rebuttable presumption that a candidate knows of and consents to any publication or advertisement prohibited by this section caused by a political committee over which the candidate exercises any direction and control.

"(4) Any candidate or political committee aggrieved by a violation of this section shall have a right of action against the person alleged to have committed the violation. The aggrieved party may file the action in the circuit court for any county in this state in which a defendant resides or can be found or, if the defendant is a nonresident of this state, in the circuit court for any county in which the publication occurred. To prevail in such an action, the plaintiff must show by clear and convincing evidence that the defendant violated subsection (1) of this section.

"(5) Except as provided in subsection (6) of this section, a plaintiff who prevails in an action provided by subsection (4) of this section shall recover punitive damages and also may recover general damages if any have been suffered. Proof of general damages is not required for recovery of punitive damages. Any prevailing party may be awarded reasonable attorney fees.

"(6) A political committee has standing to bring an action provided by subsection (4) of this section as plaintiff in its own name, if its purpose as evidenced by its preelection activities, solicitations and publications has been injured by the violation and if it has fully complied with the provisions of this chapter. A political committee may not be sued as defendant in such an action. A recovery made by a political committee which prevails in an action under this section shall be distributed pro rata among the persons making [the] contributions to the committee.

election campaign for the Democratic nomination for a seat in the Oregon House of Representatives. He also sought to have the defendant deprived of the nomination and the nomination declared vacant. The jury found for the plaintiff in certain respects. The court, upon motion by the defendant, entered a judgment notwithstanding the verdict and awarded the defendant attorney fees. Plaintiff appeals. We modify the judgment as to attorney's fees, but otherwise affirm.

In his complaint, plaintiff alleged that the defendant knowingly made and published false statements of material fact relating to plaintiff as a candidate during the course of the primary campaign. He set forth each of the alleged false statements in a Bill of Particulars. After the conclusion of the plaintiff's case, the trial court withdrew some of these allegations from the jury's consideration and allowed the plaintiff to amend others. Only one of these allegations, specification 14(b), is of particular concern to us. As amended, it states:

"On numerous occasions Chuck Bennett stated that as a State Representative Jack Sumner had

"(7) If a judgment is rendered in an action under this section against a defendant who has been nominated to public office or elected to a public office other than state Senator or state Representative, the defendant shall be deprived of the nomination or election and the nomination or office shall be declared vacant.

"(8) An action under this section must be filed not later than the 30th day after the election relating to which a publication or advertisement in violation of this section was made. Proceedings on a complaint filed under this section shall have precedence over all other business on the docket. The courts shall proceed in a manner which will insure that:

"(a) Final judgment on a complaint which relates to a primary or nominating election is rendered before the 30th day before the general election; and

"(b) Final judgment on a complaint which relates to an election to an office is rendered before the term of that office begins.

"(9) The remedy provided under subsection (4) of this section is the exclusive remedy for a violation of this section."

As amended by Or Laws 1979, ch 667 § 2.

voted against the Farm Use Deferral, the establishment of a state veterinary school, the widening of Highway 97, and city and county revenue sharing."

The case was submitted to the jury in the form of interrogatories relating to certain alleged false statements, including some of those in specification 14(b). The jury found for the plaintiff on two of these. They found that the defendant made a false statement of material fact:

"(1) by publishing or causing to be published a statement that Jack Sumner voted against Farm Use Tax Deferral; and

"(2) by publishing or causing to be published a statement that Jack Sumner voted against county revenue sharing."

Thereafter, the trial judge entered a judgment notwithstanding the verdict and an alternative order for a new trial on the ground that, as a matter of law, the evidence was insufficient to prove the plaintiff's case. In addition, he concluded that it was error to allow the plaintiff to amend his complaint and that, without amendment, it failed to state a cause of action.

Plaintiff raises numerous assignments of error on appeal. Defendant cross appeals challenging, among other things, the court's jurisdiction to hear cases involving contests of legislative primary elections. It is not necessary for us to decide all of these issues because we conclude that the trial court's order entering judgment for the defendant was proper.

To prevail in a cause of action brought under ORS 260.532, the "plaintiff must allege and prove that the defendant (1) published, (2) a false statment, (3) of a material fact, (4) knowing it to be false." *Committee to Retain Judge Tanzer v. Lee,* 270 Or 215, 218, 527 P2d 247 (1974); *see also Cook v. Corbett,* 251 Or 263, 268, 446 P2d 179 (1968).

In a series of cases, the Oregon Supreme Court has concluded that:

[279]

"Statements are not false as that word is used in the Corrupt Practices Act if any reasonable inference of opinion or of correct fact can be drawn therefrom." *Thornton v. Johnson,* 253 Or 342, 362, 453 P2d 178 (1969); *see also Comm. to Retain Judge Tanzer v. Lee, supra; Mosee v. Clark,* 253 Or 83, 453 P2d 176 (1969).

This is true even if an erroneous inference can be drawn from the same statement. Thus, ambiguous statements are excluded from the operation of the act. *Comm. to Retain Judge Tanzer v. Lee, supra* at 220. It follows from these decisions that statements of opinions themselves are not actionable as "false statements" within the meaning of the act.

We turn now to an examination of the challenged statements in this case. It is clear from the record that the plaintiff voted against a measure *relating to* the farm use tax deferral. However, what the effect of a "no" vote would be is a matter of opinion. The head of the legislative revenue office testified that the bill in question would modify the existing law on taxation of farms by requiring a certain amount of income to be derived from the land before it could qualify as farm use and subject to the farm tax rate. The impact of the law, if passed, would be to disqualify some land which is now considered farm land from property tax deferral.

In the plaintiff's view, passage of this bill would have been harmful to many people in his community because it would eliminate from the coverage of the deferral those individuals who are not full time farmers but who own some acreage and raise crops or livestock for their own consumption. Thus, a no vote was, according to plaintiff, a vote *for* farm tax deferral. However, in the defendant's opinion, passage of the bill would benefit farmers by disqualifying non-farmers and guaranteeing more money for farmers over a longer period of time. Taking this view, a no vote would be *against* farm tax deferral. As this recitation demonstrates, defendant's statement concerning

plaintiff's vote was a matter of opinion and not actionable. *Thornton v. Johnson, supra.*

The evidence on county revenue sharing is less clear. Apparently, the defendant relied upon the plaintiff's voting record on a number of bills to support his claim that the plaintiff voted against county revenue sharing. Nowhere in the record can we find an adequate explanation of these bills and their likely effect. Further, there is no testimony from the plaintiff himself on this issue. The defendant did, however, testify that the plaintiff's voting pattern on certain bills would, in his view, be a vote against county revenue sharing.

Under the facts of this case, the characterization of the plaintiff's voting record was an evaluation of what would be the likely effect of plaintiff's vote on certain bills. An evaluation is an expression of opinion. Therefore, the challenged statements by the defendant were not actionable falsehoods within the meaning of ORS 260.532. This is true no matter how ill-founded or unreasonable the defendant's opinions might have been. As the Supreme Court has stated:

> " * * * it is not necessary that the opinions expressed or reasonably inferred be well founded. If reasonableness were the test, the courts would become censors of political campaigns and would be called upon to judge the reasonableness of all campaign statements and the possible inferences to be drawn therefrom. Courts are, and should be, most reluctant to interfere in the political process and will not do so unless compelled by a clear legislative directive. We do not find such a clear directive in the Oregon Corrupt Practices Act." *Thornton v. Johnson, supra,* at 362; *see also Committee to Retain Judge Tanzer v. Lee, supra,* at 220.

We conclude that the trial court was correct in entering a judgment for defendant notwithstanding the jury verdict.

There is one other issue we must decide. Plaintiff assigns as error the trial court's award of attorney fees

to the defendant. Plaintiff raises two contentions: that the award was an abuse of discretion and that the trial court lacked jurisdiction to make the award. There is no challenge to the amount of the award.

ORS 260.532(5) allows a trial court to award reasonable attorney fees to any prevailing party in election contests involving corrupt election practices. The defendant was the prevailing party in this case. It was within the trial court's discretion to award him attorney fees and we find no abuse of that discretion.

The jurisdictional argument raised by plaintiff is more substantial. The judgment for plaintiff on the jury verdict was entered on December 12, 1978. The court entered judgment for defendant on February 1, 1979, and made no award of attorney fees. Defendant moved for attorney fees on February 8, 1979--57 days after judgment had been entered. The attorney's fees were granted by the court on February 14.

The award of attorney's fees under a statute such as ORS 260.532(5) is a part of the judgment, and not an award of costs. *Pritchett v. Fry,* 286 Or 189, 192, 593 P2d 1133 (1979). Our analysis of the applicable statutes establishes that, because it was a substantive part of the judgment, the award of attorney's fees was not permissible.

Former ORS 18.140(4)[2] provided that motions for judgments notwithstanding the verdict are governed by the time limits expressed in former ORS 17.615.[3] That latter statute provided, in part, that:

> "A motion to set aside a judgment and for a new trial * * * shall be filed within 10 days after the filing of the judgment sought to be set aside, or such further time as the court may allow. * * * The motion shall be heard and determined by the court within 55 days from the time of the entry of judgment, and not

[2] Amended by Or Laws 1979, ch 284 § 199, now Oregon Rule of Civil Procedure 63.

[3] Amended by Or Laws 1979, ch 284 § 199, now Oregon Rule of Civil Procedure 63.

thereafter, and if not so heard and determined within said time, the motion shall conclusively be deemed denied."

An order granting a motion for new trial and judgment notwithstanding the verdict is a nullity if not entered within 55 days from the entry of judgment. *Cowlthorp v. Branford,* 279 Or 273, 275, 567 P2d 536 (1977), *Crow v. Junior Bootshops,* 241 Or 135, 137, 404 P2d 789 (1965), *Clark v. Auto Wholesale Co. Inc.,* 237 Or 446, 449, 391 P2d 754 (1964). The purpose of ORS 17.615 is to "bring litigation to a definite conclusion when a decision on the merits has been reached." *State ex rel State Farm v. Olsen,* 285 Or 179, 183, 590 P2d 231 (1979).

The policy of finality expressed in the above cases is equally applicable here. Absent some stipulation of the parties that the court could rule on the matter at a separate, later time, the trial court was without jurisdiction to enter an award of attorney's fees—and thereby substantively amend the judgment—after the 55 days had elapsed. Accordingly, the judgment below is modified by eliminating the provision for the payment of respondent's attorney's fees. In all other respects, it is affirmed.

Affirmed as modified.