Submitted November 4, 2015, reversed and remanded February 3, 2016

YES ON 24-367 COMMITTEE,
*Plaintiff-Appellant,*

*v.*

Todd DEATON,
an individual;
George F. Stormo, an individual;
Ocey Grant, an individual; and
Bill Burgess, in his official capacity
as Marion County Clerk,
*Defendants-Respondents,*

*and*

Mike HOLLAND,
an individual,
*Defendant.*

Marion County Circuit Court
14C14391; A158181

367 P3d 937

Ross A. Day, Matthew Swihart, and Day Law Group, PC, filed the briefs for appellant.

David L. Carson filed the brief for respondents Todd Deaton, George F. Stormo, Ocey Grant.

No appearance for respondent Bill Burgess.

Before Lagesen, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

GARRETT, J.

## GARRETT, J.

Plaintiff is a political committee that was organized to support the passage of a local ballot measure in Marion County in the May 2014 election. Defendants Deaton, Stormo, and Grant are individuals who placed a statement opposing the measure in the Marion County Voter Pamphlet.[1] Before the election, plaintiff brought suit under ORS 260.532, alleging that defendants violated that statute by knowingly or recklessly making a false statement of material fact in their voters' pamphlet statement.[2] Defendants moved to strike the complaint under ORS 31.150, Oregon's "anti-SLAPP" statute. The trial court granted that motion and dismissed the case. Plaintiff appeals. Because we conclude that the trial court erroneously characterized defendants' statement as "opinion," rather than as an assertion of fact, and because the trial court erred in applying the legal standard relevant to an anti-SLAPP motion, we reverse and remand.

To provide context for our review, we begin with a brief overview of the anti-SLAPP statute, ORS 31.150.[3] "The

---

[1] A fourth defendant, Burgess, was dismissed from the case.

[2] ORS 260.532(1) provides:

"No person shall cause to be written, printed, published, posted, communicated or circulated, any letter, circular, bill, placard, poster, photograph or other publication, or cause any advertisement to be placed in a publication, or singly or with others pay for any advertisement, with knowledge or with reckless disregard that the letter, circular, bill, placard, poster, photograph, publication or advertisement contains a false statement of material fact relating to any candidate, political committee or measure."

[3] ORS 31.150 provides, in relevant part:

"(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

"(2) A special motion to strike may be made under this section against any claim in a civil action that arises out of:
"* * * * *

"(c) Any oral statement made, or written statement or other document presented, in a place open to the public or in a public forum in connection with an issue of public interest; or

purpose of [the anti-SLAPP statute] is to 'permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage.'" *Mullen v. Meredith Corp.*, 271 Or App 698, 700, 353 P3d 598 (2015) (quoting *Staten v. Steel*, 222 Or App 17, 27, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009)). The anti-SLAPP statute provides for, via a special motion to strike, "the dismissal of claims against persons participating in public issues, when those claims would be privileged under case law, before the defendant is subject to substantial expenses in defending against them." *Mullen*, 271 Or App at 700 (quotation marks omitted).

Special motions to strike under ORS 31.150 are resolved according to a "'two-step burden-shifting process.'" *Neumann v. Liles*, 261 Or App 567, 572, 323 P3d 521, *rev allowed*, 356 Or 516 (2014) (quoting *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013)). In *Neumann*, we explained:

> "In accordance with ORS 31.150(3), a court must first determine whether the defendant has met its initial burden to show that the claim against which the motion is made arises out of one or more protected activities described in ORS 31.150(2). Second, if the defendant meets that burden, the court must determine whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case."

*Id.* (internal citations, quotation marks, and brackets omitted). We review a trial court's ruling on an ORS 31.150

---

"(d) Any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(3) A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

"(4) In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

special motion to strike for legal error. *Id.* at 572-73; *see also Mullen*, 271 Or App at 704.

We take the following facts from the pleadings and from the supporting and opposing affidavits submitted to the trial court, ORS 31.150(4), and we state them in the light most favorable to plaintiffs. *Mullen*, 271 Or App at 702. Ballot Measure 24-367 in the May 2014 election would have authorized the Aurora Rural Fire Protection District No. 63 (fire district) to issue general obligation bonds to pay for capital projects. The bonds would have resulted in a property tax assessment of $0.49 per $1,000.00 of assessed value.

Defendant Deaton was formerly a lieutenant with the fire district and had also served as mayor of Aurora. He, along with defendants Stormo and Grant, published a statement opposing the ballot measure in the Marion County voters' pamphlet. At issue in this appeal is the second sentence of defendants' voters' pamphlet statement, which asserts, "This bond levy will DOUBLE the Fire District Tax assessments for the next 20 Years." (Capitalization in original.) According to plaintiff, that statement is objectively and provably false. That is so because, at the time of the May 2014 election, two other fire district property tax assessments were in effect. The first was in the amount of $0.8443 per $1,000.00 of assessed value. The second, a "local option," was in the amount of $0.49 per $1,000.00 of assessed value. Taken together, the existing assessments totaled $1.3343 per $1,000.00 of assessed value. Ballot Measure 24-367, by authorizing an additional $0.49 per $1,000.00, would, therefore, not have "doubled" the existing "assessments"; it would have doubled only one of the *two* existing assessments. Moreover, an additional $0.49 assessment on top of $1.3343 in existing assessments would have totaled $1.8243, resulting in only a 37 percent increase in the "assessments," and not the doubling—a 100 percent increase—as asserted in defendants' statement.

Defendants' response to plaintiff's contention is reflected in the findings of fact and conclusions of law that the trial court entered in granting defendants' anti-SLAPP motion. The trial court found:

"Defendant [Deaton] drafted the [voters' pamphlet statement] after reviewing his property tax statement. The Defendant concluded that in his opinion Measure 24-367 would impose a tax of $0.49 per $1,000.00 assessed value and that this increase was the same as the previously imposed local option tax of $0.49 per $1,000.00 assessed value, thereby doubling the presently existing local option tax used to support the fire district. His opinion was so stated in the Statement."

The trial court also found that "the [voters' pamphlet statement] was the expression of the Defendants' opinion." In its conclusions of law, the trial court reiterated that "[t]he [voters' pamphlet statement] was the expression of the Defendants' opinion." The trial court also concluded:

"f. The Plaintiff failed to present sufficient evidence to demonstrate a prima facie case that the Defendants knowingly made a false statement or made the Statement with a reckless disregard sufficient to demonstrate liability pursuant to ORS 260.532. Defendants presented more believable and persuasive evidence and established a reasonable explanation for Defendants' opinion.

"g. In addition, pursuant to [*Comm. of 1000 v. Eivers,* 296 Or 195, 674 P2d 1159 (1983)], supra, the Court finds that a reasonable, permissible, and indeed the most probable, interpretation of the Statement is that the Defendants intended to compare the proposed tax imposed by Measure 24-367 to the existing local option tax as listed in Defendant [Deaton's] real property tax statement; that the 'assessments' (plural) referred to the proposed tax and the existing local option tax and that the twenty year figure referenced in the Statement referred to the period of time for which the bonds issued under Measure 24-367 would mature."

We thus understand the trial court to have concluded both that plaintiff failed to make a *prima facie* case that defendants made a "false statement of material fact" (because, in the trial court's view, the challenged statement was an expression of opinion) and that plaintiff failed to make a *prima facie* case that defendants had acted with "knowledge or reckless disregard" of any falsity (because, in the trial court's view, defendants "presented more believable and persuasive evidence and established a reasonable explanation for Defendants' opinion").

On appeal, plaintiff argues that the trial court erred because (1) the challenged statement is not an expression of opinion—it is an assertion of fact; (2) that assertion of fact is false; and (3) the trial court improperly weighed the evidence in violation of ORS 31.150 in concluding that defendants had proffered a "reasonable explanation" for why they chose the wording that they did.

Defendants counter that the trial court correctly regarded the statement as a nonactionable expression of opinion. They also argue that, even assuming that the trial court was mistaken as to that point and that the statement is factual, plaintiff failed to make the requisite showing that the statement is false, or that defendants knew or had reckless disregard of any falsity. Defendants also argue that the trial court properly considered the evidence in resolving the anti-SLAPP motion.

On review, we must first determine whether plaintiff, for purposes of surviving defendants' anti-SLAPP motion, met its burden to make a *prima facie* showing that defendants violated ORS 260.532.[4] That inquiry turns on several questions. First, if we agree with defendants that the statement is not an assertion of fact, then plaintiff's claim was properly dismissed because plaintiff failed to satisfy an element of ORS 260.532 (if there was no factual assertion, there could be no false statement of material fact). If, however, we conclude that the statement *is* an assertion of fact, then we must next consider whether plaintiff presented substantial evidence in support of a *prima facie* case that defendants' statement violated ORS 260.532.

We begin with the trial court's determination that defendants' statement was an expression of opinion. ORS 260.532 applies to statements of "fact" but does not define that term, nor does it define "opinion." In the defamation context, a statement expresses an opinion if it "'cannot reasonably be interpreted as stating actual facts.'" *Neumann,*

---

[4] On appeal, the parties do not dispute whether defendants have met their initial burden to show that the claim upon which the motion is made "arises out of one or more protected activities described in ORS 31.150(2)." We proceed, as the parties do, on the assumption that defendants met that burden. *See Neumann,* 261 Or App at 572 (explaining burden-shifting requirements of the anti-SLAPP statute).

261 Or App at 578 (quoting *Hickey v. Settlemier*, 141 Or App 103, 110, 917 P2d 44, *rev den*, 323 Or 690 (1996)); *see also Obsidian Finance Group, LLC v. Cox*, 812 F Supp 2d 1220, 1223 (D Or 2011), *aff'd*, 740 F3d 1284 (9th Cir 2014) (explaining that "the 'threshold question' in a defamation claim is 'whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact'" (quoting *Gardner v. Martino*, 563 F3d 981, 987 (9th Cir 2009))). Using that definition, we readily reject defendants' argument that the challenged statement is an "opinion" rather than a factual assertion. Certainly, a reasonable factfinder would understand that *most* of the content of the voters' pamphlet statement reflects defendants' subjective views that the proposed measure is unnecessary and wasteful—pure expressions of political opinion. The particular sentence that is the subject of plaintiff's complaint, however, is unmistakably factual. That sentence, which appears near the beginning of the voters' pamphlet statement, asserts that "[t]his bond levy will DOUBLE the Fire District Tax assessments for the next 20 Years." That statement clearly and unequivocally asserts a matter of objective, mathematical fact. Indeed, as a matter of law, it can only "reasonably be interpreted as stating actual facts." *Neumann*, 261 Or App at 578.

We considered the fact-opinion distinction in the ORS 260.532 context in *Sumner v. Bennett*, 45 Or App 275, 280-81, 608 P2d 566 (1980). In *Sumner*, the plaintiff, who was the incumbent candidate for the state Senate, sued the defendant for making false statements during the primary campaign that alleged, among other things, that the plaintiff had "'voted against the Farm Use Deferral.'" *Id.* at 278-79. At trial, evidence was offered that the bill at issue "would modify the existing law on taxation of farms by requiring a certain amount of income to be derived from the land before it could qualify as farm use and subject to the farm tax rate," resulting in the "disqualif[ication] of some land [currently] considered farm land from property tax deferral." *Id.* at 280.

The plaintiff contended that voting in favor of the bill "would have been harmful * * * because it would eliminate from the coverage of the deferral those individuals who

are not full time farmers * * *. Thus, a no vote was, according to plaintiff, a vote *for* farm tax deferral." *Id.* (emphasis in original). The defendant asserted that passing the bill would have "benefit[ted] farmers by disqualifying non-farmers and guaranteeing more money for farmers over a longer period of time. Taking this view, a no vote would be *against* farm tax deferral." *Id.* (emphasis in original). On those facts, we concluded that the defendant's statement "concerning [the] plaintiff's vote was a matter of opinion and not actionable." *Id.* at 280-81.

Thus, in *Sumner*, even though the statement appeared on the surface to be a factual assertion, we construed the statement to be, in reality, a characterization of the meaning of the plaintiff's vote, and, thus, a nonactionable expression of opinion. This case is different. Again, defendants' statement expresses an assertion of objective, mathematical fact.

We must next consider whether plaintiff made a *prima facie* showing that, in making that statement of fact, defendants violated ORS 260.532. To make that *prima facie* showing, a plaintiff must proffer substantial evidence that the defendant (1) published (2) a false statement (3) of a material fact (4) with knowledge or reckless disregard that it was false. *Comm. to Retain Judge Jacob Tanzer v. Lee*, 270 Or 215, 218, 527 P2d 247 (1974); ORS 260.532(1). In this case, there is no dispute as to whether the defendants "published" a statement or whether that statement was "material." We address the remaining questions of whether plaintiff made its threshold showing that defendants' statement was false, and, if so, that defendants acted with knowledge or reckless disregard that it was false.

Statements are not "'false,'" under ORS 260.532(1), if "any reasonable inference can be drawn from the evidence that the statement is factually correct or that the statement is merely an expression of opinion." *Comm. of 1000*, 296 Or at 202. Further, the "mere possibility of an inference of falsity does not confer a right of action under ORS 260.532 if the evidence may also give rise to a reasonable inference of correct fact or to a reasonable inference that the comment is the expression of an opinion." *Id.* An ambiguous statement,

"or the possible erroneous inference to be drawn therefrom, [does] not constitute a violation" of ORS 260.532. *Tanzer*, 270 Or at 220 (citing *Mosee v. Clark*, 253 Or 83, 88, 453 P2d 176 (1969) ("The Legislative Assembly did not undertake to outlaw ambiguous political utterances.")).

We have already concluded that defendants' statement cannot reasonably be understood as an expression of opinion. It remains to be considered whether their statement can reasonably be interpreted in a manner that makes it "factually correct."

In *Comm. of 1000*, Brown and the defendant were opposing candidates for election to the Oregon Senate. The defendant distributed campaign literature that contained the following statements:

> "'Property Tax—In 1977 W. Brown introduced SJR 52, which would have established a new statewide property tax.'
>
> "'* * * [A]t a time when the people were clearly saying they wanted LOWER PROPERTY TAXES, [Brown] introduced legislation to add a new, state-wide property tax.'"

296 Or at 198 (first brackets in original, second brackets added). The literature referred to Brown's sponsorship of Senate Joint Resolution 52 (SJR 52) during the previous session of the Oregon Legislative Assembly. SJR 52 proposed that a constitutional amendment be submitted to a vote of the people that, if passed, would make changes to property taxes. *Id.* at 198-99. The resolution did not pass the first chamber. *Id.* at 201. Brown sued, alleging that the defendant's statements were false because, even if SJR 52 had passed in the legislature, it would not have "established" or "added" a new statewide property tax. *Id.* The defendant claimed that none of the statements were false. To determine "whether any inference [could] be drawn that the defendant's statements were correct statements of fact," the Supreme Court "examine[d] the words in question to see whether, in any accepted way, the words [could] be said to be factually correct." *Id.* at 202. The court first concluded that, "[t]o the degree that the defendant's statements imply a *permanent* enactment, they are false." *Id.* (emphasis added). The court explained that

"the passage of SJR 52 by the legislature, *of itself*, would have established no statewide property tax. The passage of the constitutional amendment by the voters, *of itself*, would have neither put in place nor added a new, statewide property tax. * * * [O]ne could argue with equal validity that the subsequent enactment of the tax measure, *of itself*, did not establish or add a statewide property tax. [But t]aken collectively, the sequence above unquestionably would have established or added a statewide property tax."

*Id.* at 202-03 (emphases in original). Ultimately, the court concluded that the defendant's statements did not violate ORS 260.532 because it was not "unreasonable to infer that the language of section 2 of SJR 52 would have established or added a statewide property tax, at least in the sense that SJR 52 'authorized,' 'included,' or 'set up' one." *Id.* at 203.

In this case, relying on *Comm. of 1000*, defendants argue that their statement is not false because it is reasonably susceptible to alternative meanings, only one of which is incorrect. As defendants put it,

"if the question is limited to the local option levies, then the Defendants' statement is factually correct. If the question is opened to Fire District taxes of any and all kinds, however, the Defendants' statement is factually incorrect."

Thus, defendants reason, because their statement is reasonably susceptible to an interpretation that makes it true, it cannot be "false" under *Comm. of 1000*. 296 Or at 204 (explaining that "an ambiguous statement, or the possible erroneous inference to be drawn therefrom" does not constitute a violation of ORS 260.532) (citation omitted). The premise of defendants' argument is that their statement is, in fact, reasonably capable of being interpreted in the way they suggest—namely, that the statement that the "bond levy will DOUBLE the Fire District Tax assessments for the next 20 Years" is reasonably capable of being understood to refer to only one of the two "assessments" in effect at the time.

We are not convinced. For one thing, the statement expressly refers to "the Fire District Tax assessments" in the plural. By its terms, the statement is all-encompassing (to use defendants' own words, it naturally suggests fire

district assessments "of any and all kinds"). The statement—indicating that whatever amount the reader currently pays for fire district taxes on her property tax bill will be doubled if the measure passes—precludes defendants' alternative interpretation that "the * * * assessments" could be understood to refer only to the existing "local option." Further, the remainder of the voters' pamphlet statement could have clarified that the authors meant only that the smaller of the two existing assessments (the local option) would be doubled. But the document makes no such clarification, nor does it acknowledge any differentiation between those two assessments. Thus, taken at face value, the statement is false.

Of course, the truth and falsity of statements must be evaluated in the context in which one would interpret them. *See Neumann*, 261 Or App at 578-79 (considering the defendant's challenged statements "as a whole" to determine whether they were defamatory or merely hyperbolic opinion and concluding that specific "factual details demonstrate that [the] defendant's statements are not mere hyperbole and * * * would not be brushed off as mere hyperbole by a reasonable reader of those statements"); *Wheeler v. Green*, 286 Or 99, 104-06, 593 P2d 777 (1979) (considering, in the context in which statements were made, whether one would have understood the statements to defame the plaintiff); *Obsidian Finance Group., LLC*, 812 F Supp 2d at 1222 (explaining that, although some statements could "be reasonably interpreted as implying a provable factual assertion if considered in isolation, they could not be so reasonably interpreted when they were considered in context").

Defendants' argument that their statement can be reasonably understood to refer to only *one* of two existing assessments, despite their explicit reference to "assessments" in the plural, necessarily presumes a certain knowledge possessed by the reader (among other things, the fact that residents were paying two different assessments, so that the measure was capable of "doubling" one of them but not the other). Defendants have made no showing, however, that the audience for their statement had such knowledge or any other requisite context within which they would have the ability to interpret the statement in a way that

rendered it accurate. Thus, plaintiff has made a *prima facie* showing that defendants made a false statement of material fact.

The remaining question is whether plaintiff made the requisite showing, in response to defendants' anti-SLAPP motion, that defendants acted with knowledge or reckless disregard that the statement is false. Here, defendants point out that plaintiff produced no evidence of its own regarding defendants' state of mind. Defendant Deaton, meanwhile, submitted an affidavit describing his belief, after reviewing his own property tax statement, that the ballot measure would double the amount of the local option assessment, which formed the basis for the assertion that the measure would "double" the "Fire District Tax assessments." As we understand defendants' argument, it is that Deaton's stated intention to compare the proposed ballot measure to the existing local option—*i.e.*, that he did not mean to create any false impression—is sufficient to defeat plaintiff's claim.

The problem with defendants' position is that, at this anti-SLAPP stage, plaintiff does not have to *prove* that defendants acted knowingly or recklessly. Plaintiff need only present substantial evidence of a *prima facie* case. *Young*, 259 Or App at 501. We do not agree that plaintiff's failure to submit *direct* evidence of defendants' mental state is fatal to its claim under these circumstances. *See OEA v. Parks*, 253 Or App 558, 566-67, 291 P3d 789 (2012), *rev den*, 353 Or 867 (2013) ("Nothing in the SLAPP statute suggests that only direct evidence, as opposed to reasonable inferences from other evidence, will suffice to support a *prima facie* case."). Indeed, direct proof of a defendant's subjective state of mind is typically hard to come by, and intent, knowledge, and recklessness are often inferred from surrounding circumstances. *See, e.g., Dunn v. City of Milwaukie*, 355 Or 339, 350, 328 P3d 1261 (2014) (explaining that "intent can be inferred from the circumstances"); *Turner, Adm'r, v. McCready et al.*, 190 Or 28, 54, 222 P2d 1010 (1950) ("The element of recklessness may, under some circumstances, be inferred from evidence of the [defendant's] conduct in the light of conditions and of what he must have known."); *State v. Neel*, 8 Or App 142, 149, 493 P2d 740 (1972) ("We are aware that

seldom can direct evidence be produced that the accused had actual knowledge of a given fact. However, knowledge may be inferred from the circumstances[.]").

Here, a *prima facie* showing that defendants were at least reckless is established by reasonable inferences that may be drawn from the circumstances. First, as already discussed, the notion that the measure would have doubled the "Fire District Tax assessments," rather than just one of the existing assessments, is flatly and obviously wrong. Plaintiff also points out that defendant Deaton, as a former fire department lieutenant and former mayor of Aurora, likely was aware that more than one assessment was in effect at the time that he crafted his statement. Additionally, according to defendants, Deaton crafted the statement after reading his property tax statement. That document, which is in the record, clearly itemizes the two different existing fire district assessments. From those facts, it can reasonably be inferred, at least for purposes of surviving an anti-SLAPP motion, that defendants had actual knowledge of the two different assessments and intentionally or recklessly exaggerated the effect of the ballot measure by falsely representing that it would double the "assessments," not just the local option "assessment."

In concluding otherwise, the trial court determined that defendants offered "more believable and persuasive evidence and established a reasonable explanation" for why they chose the wording that they did. We agree with plaintiff that, in doing so, the trial court erred in its application of the anti-SLAPP standard. In resolving special motions to strike under ORS 31.150, a trial court must "limit[] its analysis to the question [of] whether plaintiff had met [its] burden 'by presenting substantial evidence to support a prima facie case.'" *Young*, 259 Or App at 507 (quoting ORS 31.150(3)). In *Young*, the trial court concluded that, even though the plaintiff had "brought forth substantial evidence in her favor, * * * because there is also substantial evidence to the contrary, the court [was] unable to conclude that plaintiff has established *a* probability of success on the merits." *Id.* at 506-07 (emphasis omitted; brackets omitted). On appeal, we concluded that

"the statute, read as a whole, dictates that a plaintiff has met its burden where it has, in fact, 'present[ed] substantial evidence to support a prima facie case.' In other words, the statutory text indicates that the presentation of substantial evidence to support a *prima facie* case is, *in and of itself,* sufficient to establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3). * * *

"That low bar befits the pretrial nature of a special motion to strike under ORS 31.150; the goal, similar to that of summary judgment, is to weed out meritless claims meant to harass or intimidate—not to require that a plaintiff prove its case before being allowed to proceed further."

*Id.* at 508 (emphasis and brackets in original); *see also OEA,* 253 Or App at 565 (rejecting the argument that "the standard established by ORS 31.150 requires *more* evidence than that from which a reasonable jury could conclude that [the] plaintiffs had established the facts necessary to prove their claim" (emphasis in original)). We further explained, in *Young,* that the trial court had "erred in taking the additional step of attempting to determine *the strength of plaintiff's probability of prevailing* on those claims." *Young,* 259 Or App at 507 (emphasis in original). Accordingly, the trial court had "improperly weighed the parties' competing evidence and therefore erred in its application of ORS 31.150(3)." *Id.* at 506.

In this case, in light of *Young,* the trial court erred by dismissing plaintiff's claim on the ground that defendants had "more believable and persuasive evidence." The question before the trial court was whether plaintiff's evidence made a *prima facie* showing that defendants violated ORS 260.532, *i.e.,* whether plaintiff met the "low bar" required to defeat a special motion to strike. *Id.* at 508.

Defendants argue that ORS 31.150(4) requires the trial court to "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." That is true, but the trial court "may not weigh the plaintiff's evidence against the defendant's to determine whether there is a 'probability' that the plaintiff

will prevail." *Id.* at 510. Rather, the trial court may only consider opposing evidence "*'to determine if it defeats the plaintiff's showing as a matter of law.'*" *Id.* (quoting *Page v. Parsons*, 249 Or App 445, 461, 277 P3d 609 (2012) (emphasis in *Young*)). As we concluded in *Young*, the statutory text of ORS 31.150(3) indicates that the presentation of substantial evidence to support a *prima facie* case is, in and of itself, sufficient to establish a probability that the plaintiff will prevail, and whether it is likely that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3). 259 Or App at 508. In this case, regardless of whether the trial court regarded defendants' evidence as more "believable and persuasive," that evidence was not sufficient to defeat plaintiff's *prima facie* showing as a matter of law because plaintiff submitted substantial evidence of each element of a violation of ORS 260.532.

For the foregoing reasons, we conclude that the trial court erred in granting defendants' special motion to strike.

Reversed and remanded.