No. 51 January 29, 2025 519

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Johnny WAGGONER, SR.;
Joanna Dixon; and Kerry McQuisten,
*Plaintiffs-Respondents,*

*v.*

Casey L. HUSK,
*Defendant-Appellant,*
*and*

Debbie HENSHAW,
*Defendant.*

Baker County Circuit Court
22CV34538; A181038

Lung S. Hung, Judge.

Argued and submitted October 10, 2024.

Chad A. Naso argued the cause for appellant. Also on the briefs was Markowitz Herbold PC.

Vance D. Day argued the cause and filed the brief for respondents.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kamins, Judge.

AOYAGI, P. J.

Affirmed.

## AOYAGI, P. J.

Plaintiffs Johnny Waggoner, Sr., Joanna Dixon, and Kerry McQuisten were city councilors for Baker City in 2022. Defendant Casey Husk is a firefighter who was employed by the Baker City Fire Department from 2020 to July 2022. In 2022, the city council voted to stop providing ambulance service through the fire department and instead provide only fire suppression services. Defendant disagreed with that decision. After the vote, defendant pursued recall petitions against plaintiffs, in which he asserted that plaintiffs had "directly sanctioned the dissolution of the professional fire department in Baker City, destroying the network of public safety that has been in place for more than 100 years." Plaintiffs filed this action against defendant, alleging that the foregoing statement was false and thus violated ORS 260.532, a provision of Oregon's Corrupt Practices Act (OCPA). Defendant moved to strike the complaint pursuant to Oregon's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, ORS 31.150.[1] The trial court denied the motion, and defendant appeals. We affirm.

## ANTI-SLAPP FRAMEWORK

"ORS 31.150 provides a mechanism for a defendant to move to strike certain nonmeritorious claims predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 313 Or App 19, 21, 496 P3d 22, *rev den*, 368 Or 788 (2021). The purpose of ORS 31.150 is to "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage, *** before defendant is subject to substantial expenses in defending against them." *Mullen v. Meredith Corp.*, 271 Or App 698, 700, 353 P3d 598 (2015) (internal quotation marks omitted).

A special motion to strike under ORS 31.150 triggers a two-step process. First, the defendant must establish that the claim falls within the scope of protected activity under ORS 31.150(2). If that is established, then, second, "the burden shifts to the plaintiff in the action to establish

---

[1] ORS 31.150 has been amended since the trial court ruled on defendant's motion. That amendment is immaterial to our analysis, but it changed the numbering of some subsections. All citations herein are to the current statute.

that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." ORS 31.150(4). Substantial evidence means "sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Wingard v. Oregon Family Council, Inc.*, 290 Or App 518, 523, 417 P3d 545, *rev den*, 363 Or 119 (2018) (internal quotation marks omitted).

Plaintiffs face a "low bar" to defeat a special motion to strike. *Yes on 24-367 Committee v. Deaton*, 276 Or App 347, 361, 367 P3d 937 (2016). If the plaintiff clears that bar, the trial court must deny the motion and allow the claim to proceed. ORS 31.150(1). However, the court's determination that the plaintiff has established a probability of prevailing is relevant only to the anti-SLAPP motion itself—neither the fact nor substance of that determination is admissible in evidence at any later stage of the case, ORS 31.150(6)(a), and the determination "does not affect the burden of proof or standard of proof that is applied in the proceeding," ORS 31.150(6)(b).

We review the grant or denial of an anti-SLAPP motion for legal error. *Davoodian v. Rivera*, 327 Or App 197, 201, 535 P3d 309 (2023).

### FACTS

We take the facts from the pleadings and affidavits submitted to the trial court. ORS 31.150(5). We view the evidence in the light most favorable to plaintiff. *Handy v. Lane County*, 360 Or 605, 608 n 1, 385 P3d 1016 (2016).

Defendant worked for the Baker City Fire Department from 2020 to July 2022. During that time, the fire department employed 15 professional firefighters, all of whom were also certified emergency medical technicians. In addition to firefighting, the department provided ambulance service in Baker City and a significant portion of Baker County. Demand for ambulance service had increased over time and, in 2021, accounted for 84 percent of the fire department's calls.

In March 2022, during a city council meeting, Baker City's city manager recommended that the city

stop providing ambulance service through its fire department and instead let the county provide that service, as it is legally required to do. The city manager explained that providing ambulance service was costly and that "shortfalls between the cost of service and the revenues collected from the service * * * could approach a million dollars a year in the very near future." City taxpayers would have to cover any shortfall, because the fire department receives most of its funding from the city's general fund. Defendant opposed the proposed change to fire department services and voiced his opposition at city council meetings. The city council voted in favor of the change in April 2022. The fire department was to stop providing ambulance service at the end of September 2022 and, relatedly, reduce the number of firefighters from 15 to nine. Defendant left the department in July 2022.

    In September 2022, defendant filed with the city elections office six prospective petitions to recall six of the seven city councilors, including plaintiffs. He used the prospective petition recall form, SEL 350, which includes a "Statement" section with the instruction, "Provide the reasons for demanding recall in 200 words or less. Any factual information provided must be true." In that section, as to Waggoner, defendant stated in full:

> "During the Spring of 2022, Councilor Johnny Waggoner Sr. partook in the destruction of public safety in Baker City. He voted to send notice to Baker County that the city would no longer provide ambulance service. When Dean Guyer made a motion to disregard overwhelming public opposition several weeks later, Waggoner voted in support. Waggoner's consistent disregard for public input and lack of leadership have shown that he is unfit for the office he holds.

> "It is not our intent to denigrate Waggoner's character, rather we are here to hold him accountable for his errant actions in governance. It is the responsibility of the politician to heed the desires and interests of his citizens: serving in American representative government dictates as much. Waggoner has not followed those guiding principles and shown time and again an unwillingness to heed public input. *Furthermore, he has directly sanctioned the dissolution of the professional fire department in Baker City, destroying the network of public safety that has been in place*

*for more than 100 years.* The consequences of this action
must be the termination of his public service as he put
personal gain, fear, or incompetence above the safety and
interest of the people."

(Emphasis added.)

Defendant provided materially identical statements
as to plaintiffs Dixon and McQuisten. At the bottom of each
form, defendant signed below the statement, "By signing
this document, I hereby state that any factual information
(not a matter of opinion) in the above statement is true."

Based on his filings, the city elections office approved
defendant circulating recall petitions containing identical
language to the statements in his filings. Defendant pro-
ceeded to gather signatures to support a recall election of
plaintiffs.

In October 2022, plaintiffs filed this action. They
allege that defendant violated the OCPA, specifically ORS
260.532, by publishing false information in his SEL-350
filings and the recall petitions, specifically that plaintiffs
"ha[d] directly sanctioned the dissolution of the professional
fire department in Baker City, destroying the network of
public safety that has been in place for more than 100 years."
Plaintiffs allege that statement is false and that defendant
knew it was false when he published it.

Defendant filed a special motion to strike plaintiffs'
claims under ORS 31.150. After hearing argument, the trial
court denied the motion. It concluded that a reasonable trier
of fact could find that the statement that plaintiffs "ha[d]
directly sanctioned the dissolution of the professional fire
department in Baker City" was a false statement of objective
fact that defendant knew was false when he published it,
allowing the claim to proceed. The court explained, "When
you dissolve a fire department, unless other contexts exist,
there is no way to understand it, except the fire department
has been terminated or ceased to exist." Further, the record
was "clear" that defendant "knew the fire department did
not dissolve." At the same time, the court concluded that
the attached participial phrase "destroying the network
of public safety that has been in place for more than 100

years" was nonactionable opinion, given the hyperbolic use of "destroying."

## ANALYSIS

On appeal, defendant challenges the denial of his anti-SLAPP motion. It is undisputed that defendant's conduct is protected activity under ORS 31.150(2). The sole issue on appeal is whether plaintiffs presented a *prima facie* case that defendant violated ORS 260.532(1), which provides:

"No person shall cause to be written, printed, published, posted, communicated or circulated, including by electronic or telephonic means, any letter, circular, bill, placard, poster, photograph or other publication, or cause any advertisement to be placed in a publication, or singly or with others pay for any advertisement or circulate an advertisement by electronic or telephonic means, with knowledge or with reckless disregard that the letter, circular, bill, placard, poster, photograph, publication or advertisement contains a false statement of material fact relating to any candidate, political committee or measure."

A *prima facie* showing under ORS 260.532 requires evidence that defendant (1) published (2) a false statement (3) of a material fact (4) with knowledge or reckless disregard that it was false. ORS 260.532; *Bryant v. Recall for Lowell's Future Committee*, 286 Or App 691, 698, 400 P3d 980 (2017). In assessing whether plaintiffs met their burden, we do not weigh the evidence to determine whether they are likely to prevail at trial; we consider only whether they put forth substantial evidence for their claim. *Young v. Davis*, 259 Or App 497, 509, 314 P3d 350 (2013).

Defendant argues that plaintiffs failed to carry their burden on the second element (falsity)—for either of two reasons—as well as on the fourth element (mental state). Plaintiffs disagree. We consider each of defendant's arguments in turn.

As to the falsity element, defendant first argues that his statement that plaintiffs "directly sanctioned the dissolution of the professional fire department in Baker City" "can reasonably be inferred to be a correct statement of fact." A statement is not "false" for purposes of ORS 260.532 if "any

reasonable inference can be drawn from the evidence that the statement is factually correct." *Yes on 24-367 Committee*, 276 Or App at 355 (internal quotation marks omitted). In other words, an "ambiguous statement" that may be true or false, depending on how one resolves the ambiguity, is not actionable. *Bryant*, 286 Or App at 699; *see also Yes on 24-367 Committee*, 276 Or App at 353 ("[T]he mere possibility of an inference of falsity does not confer a right of action under ORS 260.532 if the evidence may also give rise to a reasonable inference of correct fact ***." (Internal quotation marks omitted.)).

Defendant's argument that his statement regarding dissolution of the fire department can reasonably be inferred to be a correct statement of fact turns on the meaning of "dissolution," so we begin with some representative definitions. The dictionary that we cite most frequently, *Webster's Third New Int'l Dictionary* 657 (unabridged ed 2002), defines "dissolution" to mean:

> "**1** : the act or the process of dissolving or breaking up: as **a :** separation into components parts <the [dissolution] of the phenome into simultaneous distinctive features—John Lotz> **b :** DISINTEGRATION, DECAY <the old hostelry, then not many years from its final [dissolution]—A.W. Long>; *esp*: the extinction of life in the human body : DECEASE, DEATH <grew convinced of his friend's approaching [dissolution]—Elinor Wylie> **c :** termination or destruction by breaking down, disrupting, or dispersing <the [dissolution] of the republic> <the [dissolution] of a treaty> <the [dissolution] of American urban life—Richard Hofstadter> <he saw his lifework threatened with [dissolution] through the political and shortsighted muddling—J.C. Fitzpatrick> **d :** final dispersion (as of an organized group) <the power of [dissolution] of a legislature at will possessed by the colonial governor—O.P. Field> **e :** LIQUEFACTION <the [dissolution] of ice> **f :** SOLUTION 2a **g :** the final liquidation of a business."[2]

Other widely available dictionaries define "dissolution" similarly, and there is no indication that the word's meaning has changed in current usage. *Oxford Languages* defines "dissolution" to mean "the closing down or dismissal

---

[2] The secondary and tertiary meanings of "dissolution" in *Webster's Third New Int'l Dictionary* 657 (unabridged ed 2002) are clearly inapplicable, so we omit them.

of an assembly, partnership, or official body." https://www.
google.com/search?q=define+dissolution (accessed Jan 13,
2025). It gives as an example "the dissolution of their mar-
riage" and lists as "similar" words cessation, conclusion, end,
ending, finish, termination, breakup, split-up, winding up/
down, discontinuation, suspension, disbandment, disestab-
lishment, disunion, separation, dispersal, scattering, proro-
gation, and recess. *Id*. It also provides a "technical" defini-
tion, which is "the action or process of dissolving or being
dissolved," such as "minerals susceptible to dissolution," and
an "archaic" definition, which is "death." *Id*.

The *Cambridge Dictionary* defines "dissolution" to
mean "the act or process of ending an official organization
or legal agreement." https://dictionary.cambridge.org/dictio-
nary/english/dissolution (accessed Jan 13, 2025). The *Collins
Dictionary* defines it as "the act of breaking up officially an
organization or institution" or "the act of officially ending
a formal agreement, for example, a marriage or a business
arrangement." https://www.collinsdictionary.com/us/dictio-
nary/english-word/dissolution (accessed Jan 13, 2025). The
*American Heritage Dictionary of English Language*, which
defendant cites, includes the definition "[d]ecomposition
into fragments or parts; disintegration."[3] https://ahdictio-
nary.com/word/search.html?q=dissolution (accessed Jan 13,
2025).

Defendant argues that, although dissolution can
mean termination or the end of existence—in which case his
statement about the fire department was false—it can also
mean the breaking up of an organization or the decomposi-
tion of something into parts. He contends that, understood
that way, his statement is true, because plaintiffs voted to
break up "the organization of the Fire Department, both in
terms of dividing its functions and its personnel."

---

[3] Defendant also cites *Webster's New Universal Unabridged Dictionary* 416
(1994) for the definitions "the undoing or breaking of a bond, tie, union, partner-
ship, etc." and "the breaking up of an assembly or organization; *** dispersal."
Those definitions are similar to the ones discussed in the text, but we have been
unable to locate that particular dictionary. We remind the bar that it is helpful
to provide a copy of more obscure sources in an appendix. *See* ORAP 5.52 ("A
party appropriately may include in an appendix, for instance, copies of a statute
or statutes at issue in the appeal, or copies of cases that are not readily available
from standard research sources.").

We are unpersuaded. The definitions of "dissolution" applicable to an entity or organization all incorporate the idea that the entity or organization ceases to exist as a result of the dissolution. *See, e.g.*, *Webster's Third New Int'l Dictionary* at 657 ("termination or destruction by breaking down, disrupting, or dispersing"; "final dispersion (as of an organized group)"; and "the final liquidation of a business"); *Oxford Languages* ("the closing down or dismissal of an assembly, partnership, or official body"); *Cambridge Dictionary* ("the act or process of ending an official organization or legal agreement"). In other words, defendant has not identified, and we have not found, any definition of "dissolution" that includes the dissolved entity continuing to exist.

Consider some common examples. When a marriage dissolves, the individuals continue as individuals, but the marriage (the thing dissolved) no longer exists. When a partnership dissolves, the partnership (the thing dissolved) ceases to exist, regardless of the status of the former partners. The cessation of existence of the thing dissolved is inherent in what "dissolution" means.

By contrast, if the Department of Motor Vehicles were to decide to limit itself to issuing driver's licenses and stop offering voter registration services, it could not be said that the Department of Motor Vehicles had "dissolved." Or, if the United States Postal Service decided to limit itself to selling postage and stop selling greeting cards, it could not be said that the United States Postal Service had "dissolved." By conflating the entity itself with the services it provides, defendant contorts the meaning of "dissolution."

Imagine a corporation that sells two distinct products lines, say snack foods and frozen meals. If the corporation decided to split into two separate corporations, one that sells only snack foods and one that sells only frozen meals, it might be reasonable to describe that as a "dissolution" of the original corporation. However, if the corporation simply decided to focus on snack foods and stop selling frozen meals, leaving other companies to sell frozen meals, no one could reasonably say that the board had voted to "dissolve" the corporation. Here, the Baker City Fire Department no longer provides a service that it used to provide—ambulance

service—but it continues to exist and cannot be said to have "dissolved" under any commonly recognized meaning of that word.

As for the more technical meaning of dissolution, which includes the concepts of decomposition and disintegration—*see Oxford Languages* ("the action or process of dissolving or being dissolved"); *American Heritage Dictionary* ("[d]ecomposition into fragments or parts; disintegration")— we understand that to refer primarily, if not solely, to physical processes by which an object ceases to exist, such as the dissolution of a tablet in water or the decomposition of organic material into soil. To the extent that it can be applied to a governmental entity or organization, its meaning is no different from the other definitions discussed above. Like those definitions more directly applicable to an entity or organization, the more technical definition also incorporates the idea that the original object ceases to exist.

Having addressed the text of the statement that is the basis for plaintiffs' claim, we next consider context. Context can sometimes clarify the intended meaning of a word, even in a way that may be at variance from its literal meaning. *See Yes on 24-367 Committee*, 276 Or App at 358 ("Of course, the truth and falsity of statements must be evaluated in the context in which one would interpret them."). Here, context does not help defendant. Nothing in the recall petitions alerts voters to the fact that the Baker City Fire Department will continue to exist and continue to fight fires. Including such information could have tipped off readers that defendant was misusing the word "dissolution" or did not mean it literally. Without that information, the statement that plaintiffs "directly sanctioned the dissolution of the professional fire department in Baker City" is much more attention grabbing—and can only be understood to mean what it says.

For those reasons, we reject defendant's first argument regarding the falsity element and proceed to his second, alternative argument on the falsity element.

Defendant argues in the alternative that, if his statement cannot be viewed as factually correct, then it

should be viewed as opinion. A statement that is "merely an expression of opinion" cannot be considered "false" for purposes of ORS 260.532. *Id.* at 353. In distinguishing between statements of fact and expressions of opinion, "the dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Neumann v. Liles*, 358 Or 706, 718, 369 P3d 1117 (2016). A statement that can reasonably be understood to imply an assertion of objective fact is not "opinion." *Yes on 24-367 Committee*, 276 Or App at 355-56.

In his opening brief, defendant relies entirely on *Sumner v. Bennett*, 45 Or App 275, 280, 608 P2d 566 (1980), to argue that his statement about dissolution of the Baker City Fire Department should be viewed as opinion. In *Sumner*, the plaintiff was an incumbent candidate for a seat in the Oregon House of Representatives during the 1978 primary election. 45 Or App at 277. Before the election, the defendant published a statement that the plaintiff "voted against the Farm Use Deferral." *Id.* at 278-79. The plaintiff challenged that statement as false in an action under ORS 260.532. *Id.* at 278. The trial court concluded that it was a nonactionable expression of opinion. *Id.* at 280. The plaintiff had in fact "voted against a measure relating to the farm use tax deferral," and there was a reasonable dispute about how that measure would ultimately affect the availability of the farm use tax deferral. *Id.* at 280-81. Because it was reasonably disputed whether a vote against that measure was a vote against the farm use deferral, defendant's statement amounted to an expression of opinion. *Id.* at 281 ("Under the facts of this case, the characterization of the plaintiff's voting record was an evaluation of what would be the likely effect of plaintiff's vote on certain bills. An evaluation is an expression of opinion. Therefore, the challenged statements by the defendant were not actionable falsehoods within the meaning of ORS 260.532.").

Defendant analogizes his statement to that in *Sumner*, arguing that he was expressing an opinion regarding the effect of not providing ambulance service through the city fire department. We are unpersuaded. The trial court properly treated defendant's effect statement—that

dissolving the fire department would have the effect of "destroying the network of public safety that has been in place for more than 100 years"—as nonactionable opinion. By contrast, defendant's statement that plaintiffs "directly sanctioned the dissolution" of the fire department does not read as an "effect" statement. The use of "directly" undermines any suggestion of an effect statement. Moreover, while it may be reasonably disputable whether the city council's decision destroyed Baker City's public safety network (an opinion), it is not reasonably disputable whether the city council directly sanctioned the dissolution of the Baker City Fire Department. Defendant's reliance on *Sumner* is misplaced.

In their answering brief, plaintiffs expand the "opinion" discussion beyond *Sumner*, arguing that defendant's statement does not qualify as opinion under the controlling *Neumann* test. Defendant responds to that argument in his reply brief. We therefore next consider the *Neumann* factors. *See Bryant*, 286 Or App at 699-700 (applying the *Neumann* test to determine whether statements were "opinion" for purposes of an ORS 260.532 claim); *Yes on 24-367 Committee*, 276 Or App at 353-54 (same).

Under *Neumann*, in deciding whether a reasonable factfinder could conclude that a statement implies an assertion of objective fact, such that it cannot be considered a mere expression of opinion, the relevant factors are "(1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Neumann*, 358 Or at 719. We agree with plaintiffs that all three factors support their position that the statement does not qualify as mere opinion.

First, the general tenor of the publication does not negate the impression that defendant was asserting an objective fact. The purpose of a recall petition is to explain to voters why an elected official should be recalled from office. It is an inherently serious publication, as reflected both in the warning on the SEL 350 form that all fact statements

must be true and by the reality that false statements of fact give rise to liability under the OCPA. A person reading such a document would expect it to contain both objective facts, regarding the elected official's actions, and political opinions, regarding the wisdom of those actions and the merits of a recall. Nothing about the general tenor of the publication would suggest to readers that seemingly factual statements contained therein should not be taken seriously as facts. *See Bryant*, 286 Or App at 702 (concluding that the general tenor of the publication implied a statement of objective fact, in part because it "was provided in the recall petition as one of the 'statements of reasons for demanding recall'").

Second, there is nothing apparently figurative or hyperbolic about the statement that plaintiffs directly sanctioned the dissolution of the fire department, so as to negate the impression of an assertion of objective fact. The only hyperbole is in the characterization of the effect of the fire department's dissolution, *i.e.*, the destruction of the city's 100-year-old public safety network. Expressing a negative opinion regarding the effect of dissolution of the fire department on public safety does not negate the impression that the dissolution of the fire department itself is a fact. *See Yes on 24-367 Committee*, 276 Or App at 354 (reversing the grant of an anti-SLAPP motion, where the defendants stated in the voters' pamphlet, "This bond levy will DOUBLE the Fire District Tax assessments for the next 20 Years[,]" a false statement that was "unmistakably factual" and thus actionable, notwithstanding that "*most* of the content of the voters' pamphlet statement reflects defendants' subjective views that the proposed measure is unnecessary and wasteful—pure expressions of political opinion" (emphasis in original)).

Third, whether the city councilors directly sanctioned the dissolution of the Baker City Fire Department is susceptible of being proved true or false. Defendant's arguments to the contrary depend on his attempt to stretch the meaning of "dissolution" in an untenable manner, as discussed earlier. *See Chief Aircraft, Inc. v. Grill*, 288 Or App 729, 735, 407 P3d 909 (2017), *rev den*, 362 Or 699 (2018) (the defendant's online statement that the plaintiff credit card company "flags" certain charges was "susceptible of being

proven true or false" because the company either did or did not do that).

Accordingly, we conclude that the statement at issue does not qualify as an expression of opinion and reject defendant's alternative argument on the falsity element.[4]

That leaves defendant's challenge to plaintiffs' *prima facie* case on the mental state element. Plaintiffs had to put on a *prima facie* case that defendant knew that the statement was false, or recklessly disregarded whether it was false, when he made it.[5] ORS 260.532. Defendant argues that he attested on the SEL 350 forms that he "believed the statements to be 'true and accurate' at the time they were published" and that plaintiffs' evidence was insufficient to prove otherwise. Again, we are unpersuaded.

To meet their burden to overcome defendant's ORS 31.150 motion, plaintiffs did not have to definitively prove that defendant acted knowingly or recklessly in making a false statement. *Yes on 24-367 Committee*, 276 Or App at 359. They were required "only [to] present substantial evidence of a *prima facie* case." *Id*. And they could meet their burden with circumstantial evidence rather than direct evidence. *Id*. "Indeed, direct proof of a defendant's subjective state of mind is typically hard to come by, and intent, knowledge, and recklessness are often inferred from surrounding circumstances." *Id.*

Viewing the evidence in the light most favorable to plaintiffs, as required for an anti-SLAPP motion, we agree with the trial court that plaintiffs put forward sufficient evidence for a *prima facie* case on the mental state element.

---

[4] As noted above, the trial court's determination on the anti-SLAPP motion, as well as our analysis agreeing with that determination, is based on the particular record before the trial court at this point and is relevant only to the outcome of the anti-SLAPP motion itself and not at any later procedural stage of the case. *See Erickson for Congress Com. v. Salinas for Oregon Com.*, ___ Or App ___, ___, ___ P3d ___ (2025) (noting the absence of countervailing evidence from the record before the court on an anti-SLAPP motion).

[5] Plaintiffs argue that defendant mischaracterizes the mental state element of ORS 260.532 as "actual malice." We take the culpable mental state from the text of ORS 260.532 but note that it is substantially similar to the "actual malice" standard in defamation law. *See Wingard*, 290 Or App at 523 (describing the mental state element from ORS 260.532 as similar to the "actual malice" standard from a defamation action).

There is evidence that defendant worked as a firefighter for the Baker City Fire Department from 2020 to July 2022, was involved in union negotiations with the city regarding the fire department, and attended multiple city council meetings relating to the April 2022 vote.[6] The record supports a reasonable inference that he knew that the city council did not vote to dissolve the fire department. *See id.* at 360 (concluding, with respect to an allegedly false statement regarding the fire department, that the plaintiff made out a *prima facie* case on the mental state element where, among other things, the defendant knew or should have known the true facts as a former fire department lieutenant and former city mayor).

Accordingly, we conclude that the trial court did not err in denying defendant's special motion to strike plaintiff's complaint for a violation of ORS 260.532.

Affirmed.

---

[6] In his own declaration in support of the motion to strike, defendant attested that his statements on the SEL 350 form were "based on information that [he] learned while working for [the fire department], from attending meetings of the City Council, and through news reports."